Good morning, your honors. May it please the court, Devin Burstein on behalf of Mr. Tolbert. Your honors, I'll endeavor to reserve two minutes for rebuttal, but I'll watch my time. Going straight to this court's questions from its order of last week, as the government agrees, the abuse of discretion standard does apply. We differ as to whether the guideline amendment is retroactive, whether it's a clarifying amendment. We believe it is. But before turning more directly to that issue, I think in this case a little bit of context is important. When talking about sophisticated means and comparing it to the fraud conduct here, it's our position that this was really ineptitude incarnate. The fraud here, even after the many months spent with the record and doing the briefs and preparing for argument, I don't even know what they were selling. I don't even know what the nature of this investment was. I don't know how this could have ever... Are you suggesting that the application of the sophisticated means enhancement requires an intelligent defendant? In other words, that sophisticated doesn't equate or does equate with smart? No, your honor. I would... sophisticated means means especially complex or especially intricate offense conduct. And someone can do that ineptly or do it well. That's true. That's certainly true. But here, there was nothing especially intricate. There was nothing especially complex. This was a bumbling effort. To suggest that this was sophisticated means essentially any fraud of this nature would be sophisticated. In addition, looking directly at the conduct related to my client, Mr. Tolbert, there is certainly nothing sophisticated about what he did, his few phone calls. And that's where the clarifying amendment comes into play. Because what the commission did recently is to instruct that the sophisticated means enhancement shouldn't be applied based on the conduct writ large, but rather based solely on the conduct of the defendant being sentenced. And that's a substantive change that is not applied retroactively. I would disagree. Just a clarification. That is a clear clarification. That's not a substantive change. That's not what the commission said. I respectfully... The commission did not submit it as a clarification. Well, Your Honor, that the word clarification didn't appear in the amendment is not determinative. In fact, this court has held specifically, and I'll quote, we have held that an amendment clarifies an earlier guideline when the commission simply failed to make explicit that an amendment was a clarification. That's a case called Morgan. And so the fact that the word clarify is not in the amendment is not determinative. And in fact, in the course of my research following this court's order, there was an amendment 337, and that amended section 5, section 2M5.2. That was in, I believe, 1997, and it was to the sophisticated weapon enhancement. There, this court has found that that amendment was retroactive in a case called Helmy, which is 951 F. 2nd, 988. What was the change in there? The reason there was this amendment revises this guideline to better distinguish the more and less serious forms of the offense conduct covered. But what, are you saying that it was the same change, i.e. specifying that it was the intent of the individual or some different change? It was a different change. So the exact change was different, but it was a change both in terms of commentary and to the actual guideline provision. This is amendment 337, and it was a significant change to the wording of the guideline provision. And we have the same essential scenario here. What the Sentencing Commission said about amendment 792, which is the amendment at issue here, is that that amendment is intended to narrow the focus. And the reason that was necessary is because courts had been essentially getting it wrong. The Commission had intended for the sophisticated means enhancement to apply based on the defendant's conduct, but the language had been too broad to get that result. And therefore, it needed... Judge Cook. Yes, Judge. Well, if I could interject, if the Commission is saying they intend to narrow focus, doesn't that mean it's a substantive change, not a clarification? No, Your Honor. And that's why I was pointing to amendment 337, where they said this amendment revises this guideline. To revise and to narrow, I think, are synonyms in this context. And the way I think about it, Your Honor, is if I move to a new location and I'm giving somebody directions to my house, my purpose is to get them to my house, but perhaps my directions are too broad or they're not exactly accurate. And with a little bit more experience, I can narrow those directions so they're more efficient. Now, it's not a substantive change because my purpose has remained the same, to get to my house. It's a clarification. I'm clarifying what it has... that I had always intended. And that's the same thing here with the Sentencing Commission. Oh, that's a strange rule, though. I mean, first of all, the people on the Commission change and so on. I mean, it does appear to be a substantive change. And whether it is a substantive change because they now realize it was too broad before, or that they didn't realize it would come out this way, that's not sufficient to make a clarifying, right? Your Honor, when I think of a substantive change, I think... For example, we just had with the crack cocaine guidelines. A certain amount of methamphetamine or crack would get you a level 38. Now it gets you a level 36. Let me ask you, was there ever a dispute in any of the case law under the old statute, the old guideline, as to whether the individual's intent mattered or not? In other words, I mean, usually how the clarifying things come about is in some case or cases, someone argues that it applies to this and somebody else says, no, it applies to that. And then there's a dispute about that and the courts decided, and then the Commission says, all right, we're going to clarify this. Right. And that is exactly why you have the string citation, Your Honor, in Amendment 792. So looking at those cases, it's two Seventh Circuit cases and an Eighth Circuit case that the Commission cites. It's Green, Bishop, and Jenkins, Watt. And in those cases, at least in one of them, and I believe all three of them, but at least in one of them, having reviewed them, the defendant was arguing, I didn't do anything sophisticated and the court said, it doesn't matter what you did. It's what the conduct as a whole was. The Sentencing Commission has come in now and said that's wrong. So while it's not a circuit split in the same way, it is telling these courts, that's not what we meant. Well, all the cases appear to have found the broad language. You can see the language was broad. All the cases seem to have found it applies across the board to whoever was involved in the criminal enterprise, irrespective of whether that particular individual utilized sophisticated means. So there is no other case that they were clarifying because all the courts were rejecting the argument that the one case you just cited was making. Nobody bought it. Well, but the Sentencing Commission said that's not what we intended. We wanted, you brought the wrong argument, respectfully, Court, Seventh Circuit and Eighth Circuit. You brought the wrong argument. Except the Commission didn't actually say that. Well, it said the amendment narrows the focus of the specific offense characteristic to cases in which the defendant intentionally engaged in or caused the conduct constituting the sophisticated means and then it cited those cases as the examples of why it needed to put that language in. If it had, I think if we turn it around the other direction, maybe my point is a little bit more clear. If we turn it around and say the Sentencing Commission wouldn't have cited these cases, they wouldn't have made the amendment if they didn't need to clarify the intention because courts would have been getting it right. They would have bought the right argument, but they bought the wrong argument. So to distinguish this case from the idea of a circuit split, I don't think that's a valid distinction because when there's a circuit split, the Sentencing Commission comes in and says, Ninth Circuit, you were right, Eighth Circuit, you were wrong. In this case, they're just saying nobody had gotten it right, so we're going to clarify it so that everybody gets it right. I will say... Was this a conspiracy charge in this case? No, he pled guilty to a wire fraud, a straight wire fraud, I believe. It was originally... So on what theory would you even... Oh, it's like one in each. You're not really arguing that even under the old provision, we should be looking at his means, but it says the offense otherwise involves sophisticated means, and if he is only being tried on a single wire fraud, convicted for a single wire fraud, why would we be looking at anybody's means other than his anyway? Well, in all candor, the answer is that because the guidelines define relevant conduct broadly and we're not talking about the conviction, we're talking about the sentence. So I can't tell... Even though that's not necessarily good for my position, in all candor, that's why we're doing that. Candor is good for your position. Relevant conduct, meaning his relevant conduct. Right. Well, relevant conduct will extend often within the guidelines to other actors in the offense. We know that from all of the minor role litigation that we do in comparing. So the relevant conduct is... But the sentencing commission doesn't want that to happen in the context of sophisticated means. And I see him over my time, but your honors, if I could just make one last comment, is that leaving the guideline... Our opening brief, these amendments didn't exist. And we argued that the sophisticated means was error. Because they weren't sophisticated. Because they're not sophisticated. Because none of the things cited are sophisticated. And that remains our position. It's very interesting to argue about the retroactivity. I find it fascinating. But it remains our position regardless of whether the amendment is applicable to this case or only applies going forward. That this fraud is not sophisticated. There's also a harmless error problem, I understand. But we'll talk about that with your opponent. Okay. Thank you. Thank you very much. We'll give you one minute, Roberto. Please. Good morning, your honors. May it please the court. Kyle Maurer on behalf of the United States. I would like to pick up where the defendant's attorney left off with the sophisticated means enhancement, particularly whether it is retroactive. Of course, we argue that it is not retroactive. I would be interested first in why these were sophisticated means. Yes, your honor. As you know, the district court found that the offense did involve sophisticated means. The district court cited three factors particularly. The first was that one of the co-conspirators portrayed himself as an attorney. The second was that in portrait. That's not very sophisticated. What's sophisticated about that? Your honor, in conjunction with the fact that he then faxed a falsified passport, which it was admitted that the conspirators, yes, did falsify in order to further the ruse. Those two factors combined do make it. The falsified passport didn't have anything to do with whether he was a lawyer or not a lawyer. The falsified passport was to further the fact that he was portraying himself as the attorney who he said he was. He also gave himself an alias, and so the falsified passport was to. It was a name, but it didn't prove up that he was a lawyer. That's correct. The passport would not indicate whether he's a lawyer, but it does work in tandem with the fact that he portrayed himself as a lawyer. Does the record tell us who falsified that passport? Yes, your honor. It said that I think Brie or Bry falsified it. Is there support in the record for that finding? Yes, your honor. The support would be the defendant's admission that he knew that Bry falsified the passport and knew that Bry was submitting it to the agent. And there were two other factors. Correct. And then the third factor was that Mr. Tolbert used the Levette Corporation as a shell corporation in perpetrating this scheme. The registration of the corporation to Mr. Tolbert's name is also in the record. I thought the registration was from well before the scheme even started. That's correct, your honor. The corporation was registered before the scheme was created for this purpose. We don't know whether it was created explicitly for this scheme, but that would suggest. How did he use it exactly? On the calls, he portrayed that he was the CEO of this corporation and that the corporation itself was going to be involved in the purported investment. And so by portraying that he was involved with a legitimate corporation in a way that any potential victim could look up on the Secretary of State's website, it could lend credence to his claims that he was a legitimate business person. And the problem is, and maybe this is the next candidate for unconstitutional vagueness. Who knows what sophisticated means are? It's completely amorphous. Well, your honor, of course, the commission does. This was not at least looking at all the other cases that exist about sophisticated means. This is probably if it is sophisticated means, it's probably the least sophisticated means of anything that's ever been held to be a sophisticated means. So where's the line drawn? Your honor, candidly, this is not the most sophisticated case. Probably the least that the department has ever seen. Probably the least. I don't know that I would agree with that necessarily. We don't have to go there. Does it cross the threshold of sophistication? That's the question. How do we know when it's crossed the threshold of sophistication? Your honor, I would say that the district judge found that it crossed the threshold of sophistication. Well, but he has to know what standard he's applying, and he doesn't know, and I don't know. Well, he applied three factors that you've outlined and that's supported in the record. Correct. The combination of these, here's the question, sufficient to support the application of the enhancement? And let me tell you, frankly, usually, I think you somewhat acknowledge this, many, most cases, you've got multiple investors or an intricate scheme, and we've got something more simple than that here. Well, your honor, let's take this court's case of Jennings. In Jennings, that was a tax case, and the conduct that was found in a published opinion to meet the sophisticated means threshold was that the tax cheats were using a separate account that they simply labeled on the name of one of their vendors. And that was so that they could pay themselves out of that account, and so that the IRS wouldn't notice that. Now, that mere labeling account, an account as the name of a vendor, doesn't appear to be particularly sophisticated, especially in the context of what types of tax cases are prosecuted. And in fact, this court, in its opinion, noted that, that that one single fact wasn't particularly that in order to have a fraud, there has to be fraud. So therefore, you have to do something that is fraudulent. In this instance, apparently, what they did that was fraudulent, among other things, was to have somebody who wasn't a lawyer say it was a lawyer and to use a passport that in some fashion, we have no idea. So not having seen the passport, we don't know whether it was skillfully fraudulent or stupidly fraudulent. But it was just phony. But how, whether it would actually fool anybody, who knows? Your Honor, I would argue that this scheme could be considered more sophisticated than than your average fraud scheme of that nature. As you're describing, take, for example, the simplest form of fraud. I send a single email to a potential victim saying I've got a great investment opportunity for you. Victim then responds to that email with no further conduct by sending me money. If I was misrepresenting the means by which I was going to perform, that's a simple fraud that could be charged. Clearly not sophisticated. Whereas here, we've got several conspirators acting together. They have multiple phone calls with the agent. They're pitching the investment. They're falsifying their identities. They're portraying themselves. One of them is portraying himself as an attorney. In order to further that ruse, they then falsify a passport, which they send to the agent. So they've taken multiple steps in order to lure the agent into believing that their fraud is true. You've seen several of the transcripts. These calls last for days. It's a constant persuasive effort. And the means that were cited are merely steps in furthering that ruse, which is particularly more complicated than, say, just your basic simple fraud. Counsel, Judge Gould, if I could interject. In terms of the government's position, do you agree it's abuse of discretion standard? Yes, Your Honor. We agree. So what's the significance of that standard for the determination here on sophisticated means? Your Honor, we believe that that standard is particularly important here because the district judge did find that the means were sophisticated. And because that's not beyond the pale of reasoning, as we've argued here, under the abuse of discretion standard, the district judge's determination should stand. But we have a pending on-bank case on exactly that question, don't we? I believe so, Your Honor. All right. So if we thought the standard mattered, we'd have to suspend consideration of this case. I believe you could, if you believe that the standard does matter. Yes. Do you think the standard matters? I don't, because I do believe, for the reasons we've stated, that this could be considered a sophisticated offense. The could be isn't the question. In other words, if it isn't an abuse of discretion standard, and if we're looking at a de novo as to the application of the guidelines to facts found by a district judge, then the question isn't it could be. It's what we ought, as a matter of law, to decide, right? Correct. And we believe under Jennings that the rule that is still in place is that the scheme need not be particularly sophisticated or the most sophisticated. So under that rule, it is still sophisticated. I see that my. Oh, I'm sorry. It is not. You may sit down. Wrong light. I have a question for you. If we were to find a good reason to remand this case to the district court for some error, upon remand, the district court could apply the retroactive amendment, correct? I believe that would be correct. And if the court applied the retroactive amendment under the facts of this case, the enhancement would not apply to this defendant. I believe that that would be a question that district court could grapple with. I think we grapple with it on the record that we have and give the answer. I suppose you could, but if you were to find that the amendment is not retroactive, the better practice would be to remand to the district court for the fact finding in the first place. But, you know, again, we do not believe that the amendment is retroactive because it has not met any of the three factors outlined in this case, this court's cases in Christensen and Morgan, specifically under the first factor. The amendment was not listed as a retroactive amendment under the second factor, which your honors discussed the language already that the commission didn't indicate that it was retroactive. Moreover, the commission had said that it was that that it was different. And as you can tell from the addition of the language that it applies to the defendant, it's clearly not retroactive. Moreover, the cases that are cited in the commission's amendment, as your honor pointed out earlier, none of them found that the sophisticated means enhancement applied only to an individual defendant's conduct rather than to the conduct of the scheme as a whole. These are the only cases cited by the commission. So no divergence in the law has been noted by the commission. And particularly importantly, a circuit split was not cited in the amendment, whereas circuit splits had been cited in prior amendments where this court has found retroactivity, specifically in Christensen. In Christensen, the court examined the third factor, noted that the commission itself noted a circuit split, and remanded for that reason because it considered particularly important. Here in the language of Amendment 792, a circuit split is not noted. So under all three factors and for the reasons described, the amendment is not retroactive. So, your honor, I don't believe that the district court need consider that question because the amendment is not retroactive. Okay. Thank you very much. Thank you. Are you going to give us directions to your house now? Yes. The government, in response to your question, the government suggested drawing a line at Jennings. I think that is a great place to draw the line. I am very happy to draw the line at Jennings. Because Jennings is the bottom of the sophistication. We are so far below Jennings, it would be not different in degree, it would be different in kind. In Jennings, I just pulled it up, the two defendants purported that they possessed a technology that could separate oil from dirt. They raised $16 million. They hired vendors and opened up bank accounts with mock names to fit vendor names. And then siphoned off money in different directions. Where there were actually money was taken from sophisticated parties. Sophistication in sophisticated means has to mean something. Do you have to have sophisticated parties or does the defendant have to be sophisticated for sophisticated means? I think it would be a defendant-centric test. And under that test, certainly Mr. Tolbert and this motley crew do not qualify. And therefore we would ask to vacate the sentence, remand it for the district court for a consideration under the proper standard. Thank you. Okay, thank you both very much for a very useful argument. Thank you. And an enjoyable one as well. United States v. Tolbert is submitted and we will take a short break. And thank you for your cooperation and candor.
judges: Gould, Berzon, Zouhary